UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE ZERJAV, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15-CV-1858 (CEJ) |
| | ) |
| JP MORGAN CHASE NATIONAL | ) |
| CORPORATE SERVICES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant PNC Bank, National Association to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has responded in opposition, and the issues are fully briefed.

### I. **Background**

Plaintiff Christine Zerjav brings this action to recover damages resulting from the fraudulent indorsement and negotiation of checks that were issued in payment of an insurance claim. Plaintiff and her then-husband, Frank Zerjav, were both insured under an insurance policy covering a house they owned in St. Louis County, Missouri. In November 2010, the house was damaged in a fire and a claim was submitted to the insurance company. The insurer paid the claim by issuing ten separate checks that were drawn payable jointly to plaintiff and her husband. The checks were mailed to Frank Zerjav's business address, to which plaintiff had no connection and no access.

Between November 11, 2010 and October 15, 2012, Frank Zerjav presented nine of the checks for deposit in two accounts he held at defendant PNC Bank. Plaintiff was not an owner of and did not have signatory authority for either of the accounts. According to the complaint, plaintiff did not indorse the checks, did not authorize anyone to indorse them on her behalf, and did not receive any of the proceeds of the checks. Plaintiff alleges that PNC Bank accepted the checks for deposit without requiring the signatures of all payees, or without verifying that the provided signatures were authentic and authorized.

Plaintiff alleges that she did not have actual knowledge or notice of the negotiation of any of the checks until November 29, 2012. Plaintiff commenced this lawsuit in the Circuit Court of St. Louis County, Missouri on November 30, 2015. Thereafter, the action was timely removed the to this Court. As to defendant PNC Bank, plaintiff asserts claims of conversion (Count I), violation of the Uniform Commercial Code (UCC), as codified in Missouri Revised Statutes §§ 400.3-206 and 400.3-420 (Count III), and negligence (Count V).

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)

(stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Discussion

#### A. Uniform Commercial Code

Defendant PNC Bank contends that plaintiff's UCC claim is barred by the three-year statute of limitations codified in Mo. Rev. Stat. § 400.3-118(g). Section 400.3-118(g) provides that "an action . . . for conversion of an instrument, for money had and received, or like action based on conversion . . . or . . . to enforce an obligation, duty, or right arising under this Article . . . must be commenced within three years after the cause of action accrues." Thus, the defendant argues, a cause of action accrued with the deposit of each check and the limitations period began to run when each check was deposited at PNC Bank. Because the latest deposit occurred on October 15, 2012, the deadline for asserting the UCC claim was October 15, 2015.

The plaintiff argues that the limitations period did not begin to run until November 29, 2012, when she first learned of the checks. Under the "discovery

3

rule" endorsed in some jurisdictions, the "statute of limitations for a particular claim does not accrue until that claim is discovered, or could have been discovered with reasonable diligence, by the plaintiff." Gabelli v. SEC, 133 S. Ct. 1216, 1220 (U.S. 2013) (quoting SEC v. Gabelli, 653 F.3d 49, 59 (2d Cir. 2011)). Missouri courts, however, have rejected the discovery rule.

The general limitations provision contained in the Missouri Revised Statutes provides that a cause of action "shall not be deemed to accrue . . . [until] the damage resulting therefrom is sustained and is capable of ascertainment." See Mo. Rev. Stat. § 516.100. Missouri courts have held that damage from a legal injury is "sustained and capable of ascertainment" within the meaning of section 516.100 "whenever it is such that it can be discovered or made known." Chem. Workers Basic Union, Local No. 1744 v. Arnold Sav. Bank, 411 S.W.2d 159, 164 (Mo. banc 1966); Carr v. Anding, 793 S.W.2d 148, 150 (Mo. Ct. App. 1990). The Missouri Supreme Court specifically rejected the "discovery rule" for determining the commencement of a statute of limitations for a civil cause of action in Jepson v. Stubbs, 555 S.W.2d 307, 311–12 (Mo. banc 1977). See Lane v. Non-Teacher Sch. Emp. Ret. Sys. of Mo., 174 S.W.3d 626, 638 n.5 (Mo. Ct. App. 2005) ("[T]he 'discovery rule,' as a general rule of accrual, has been rejected in Missouri as being contrary to the 'capable-of-ascertainment' rule adopted in § 516.100."); Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C., 684 S.W.2d 858, 860 (Mo. Ct. App. 1984).

Accordingly, the statute of limitations for a civil cause of action in Missouri begins to run when the fact of damage "can be discovered or made known," regardless of when a plaintiff actually discovers the damage. Sheehan v. Sheehan,

4

901 S.W.2d 57, 58–59 (Mo. banc 1995); see Carr, 793 S.W.2d at 150 (describing this principle as a "middle-of-the road" test). This test "is an objective test to be decided as a matter of law." Carr, 793 S.W.2d at 150; see Chem. Workers Basic Union, 411 S.W.2d at 165 ("[M]ere ignorance of the plaintiff of his cause of action will not prevent the running of the statute." (quoting Clapp v. Leavens, 164 F. 318, 321 (8th Cir. 1908))). The "consistent approach" promulgated by the Missouri Supreme Court is that "the statute of limitations begins to run when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. banc 2006).

Further, the general statute of limitations provisions do not apply to the claims based on the UCC. See Mo. Rev. Stat. § 516.300 ("The provisions of sections 516.010 to 516.370 shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute."). The UCC, as codified by the Missouri Revised Statutes, has its own statute of limitations which provides that an action based on check conversion must be commenced within three years after the cause of action accrues. Mo. Rev. Stat. § 400.3-118(g). The Missouri Supreme Court "has uniformly held that where a statute of limitations is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself." State ex rel. Bier v. Bigger, 178 S.W.2d 347, 350 (Mo. banc 1944); see also State ex rel. Beisly v. Perigo, 469 S.W.3d 434, 438 (Mo. banc 2015) (same). The statute of

5

limitations set forth in section 400.3-118 for actions based on conversion contains no exception for tolling.

The Court concludes that the statute of limitations in section 400.3-118(g) applies to plaintiff's claim in Count III. The complaint alleges that Frank Zerjav deposited the checks into accounts at PNC Bank between November 11, 2010 and October 15, 2012. The deposit of each check constituted a separate cause of action with its own statute of limitations. Cf. Johnson Dev. Co. v. First Nat. Bank of St. Louis, 999 S.W.2d 314, 318 (Mo. Ct. App. 1999) ("Under [the 'continuing or repeated wrong rule' in Missouri], each continuation or repetition of wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with the occurrence." (internal quotations and citation omitted)). Plaintiff's cause of action accrued upon the deposit of each check. See Powel, 197 S.W.3d at 582; Chem. Workers Basic Union, 411 S.W.2d at 165 (holding that plaintiff could have discovered the unauthorized indorsement of the check upon any inquiry with reasonable diligence, because they knew they had an insurance policy from which they could expect annual dividends, but they did nothing to find out when or what dividends were paid or who received the dividend checks; moreover, the defendant bank did nothing but cash the check and in no way concealed the transaction from anyone). As such, plaintiff was required to assert her claims against PNC Bank within three years of the deposit of each check. See Mo. Rev. Stat. § 400.3-118(g). The deadline for plaintiff to assert a claim for any of the checks was October 15, 2015. Because plaintiff did not file suit until November 30, 2015, her UCC claim in Count III is time-barred.

### B. Counts I and V – Conversion and Negligence

Defendant argues that plaintiff cannot circumvent the UCC's three-year statute of limitations by asserting common law claims based on the same underlying factual allegations that fit squarely within the UCC. As such, defendant asserts that plaintiff's conversion and negligence claims should also be dismissed. Article 3 of the UCC, as codified in the Missouri Revised Statutes, provides that "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement its provisions." Mo. Rev. Stat. § 400.1-103; Mitchell v. Residential Funding Corp., 334 S.W.3d 477, 504 (Mo. Ct. App. 2010) ("The UCC does not act to the exclusion of the common law absent an express provision within the UCC."). "Nothing short of an express code provision limiting plaintiff's remedy demonstrates displacement." Penalosa Co-op. Exchange v. A.S. Polonyi Co., 745 F. Supp. 580, 584 (W.D. Mo. 1990) (quoting Morgan Guar. Trust Co. v. Am. Sav. & Loan, 804 F.2d 1487, 1495 (9th Cir. 1986)). Thus, for defendant to prevail on its argument, a "particular provision" of the UCC must displace a common law claim; otherwise, the UCC merely supplements plaintiff's common law claims.

With respect to Count I, the circumstances giving rise to plaintiff's common law conversion claim are explicitly covered by section 400.3-420 of the Missouri Revised Statutes. Specifically, a comment to section 400.3-420 states that the statute "covers cases in which an instrument is payable to two persons and the two persons are not alternative payees . . . . Under [section 400.]3-110(d) the check can be negotiated or enforced only by both persons acting jointly." Comment, Mo. Rev. Stat. 400.3-420(a), n. 1. If a depository bank accepts such a check for

deposit into one of the payee's accounts without the valid indorsement and consent of the co-payee, the bank is liable for conversion.

As an initial matter, it is not clear whether plaintiff has a common law conversion claim against defendant under these facts outside the framework of sections 400.3-110 and 400.3-420. Moreover, allowing plaintiff to proceed with a common law conversion claim here, for which Missouri sets a five-year statute of limitations, would be inconsistent with the three-year statute of limitations the UCC sets for such claims. Compare Mo. Rev. Stat. § 400.3-118(g) ("[A]n action . . . for conversion of an instrument, for money had and received, or like action based on conversion . . . or . . . to enforce an obligation, duty, or right arising under this Article . . . must be commenced within three years after the cause of action accrues.") with Gaydos v. Imhoff, 245 S.W.3d 303, 306 (Mo. Ct. App. 2008) ("Under [Mo. Rev. Stat. §]516.120, all actions upon contracts, obligations or liabilities, including actions for conversion, must be brought within a five-year statute of limitations."). Accordingly, the Court concludes that Article 3 of the UCC, as codified in the Missouri Revised Statutes, displaces plaintiff's common law conversion claim against defendant in Count I under this set of facts. See Choice Escrow & Land Title, LLC v. BancorpSouth Bank, No. 10-03531-CV-S-JTM, 2011 WL 2601209, at *3 (W.D. Mo. June 30, 2011) (collecting cases and concluding that Missouri would adopt the rule that "the UCC displace[s] any and all common law claims that: (1) create rights, duties, or liabilities inconsistent with the UCC, and (2) where the circumstances giving rise to the common law claims are specifically covered by the provisions of the UCC") (internal quotations omitted). Count I will be dismissed.

In contrast to plaintiff's conversion claim, it is not clear that plaintiff's common law negligence claim is preempted by the UCC under the set of facts alleged. Defendant has not pointed to any particular provision of the UCC that displaces plaintiff's negligence claim. The Eighth Circuit has determined that the Missouri Supreme Court "would not hold [that] all common-law actions of negligence by a bank in connection with its handling of checks are preempted by the UCC." Cassello v. Allegiant Bank, 288 F.3d 339, 341 (8th Cir. 2002) (disregarding City of Wellston v. Jackson, 965 S.W.2d 867, 869 (Mo. Ct. App. 1998), in which the Missouri Court of Appeals had held that the UCC preempted negligence claims involving negotiable instruments, bank deposits and collections). In holding thus, the Eighth Circuit "discovered no 'particular provision' of the UCC that would 'displace' a common-law claim of negligence" in Missouri. Id. As such, in Cassello the Eighth Circuit concluded "that the Missouri Supreme Court would hold that a drawer of a check could have a common-law cause of action against a depositary bank for negligently handling the drawer's check." Id.

However, Cassello has not been extended to establish a cause of action for common law negligence to *non-customers* of the depository bank. In the Missouri Supreme Court case upon which Cassello relied, the court found that the duty the bank owed to the *plaintiff-customer* was the "duty of inquiry." Dalton & Marberry, P.C. v. NationsBank, N.A., 982 S.W.2d 231, 233–34 (Mo. banc 1998) ("A payee bank is liable if it fails to inquire as to the authority of an agent of the drawer-depositor who wrongfully diverts the proceeds of a check made payable to the order of the bank itself."). Cassello narrowly held that a drawer of a check "could have a common-law cause of against a depositary bank for negligently handling the

drawer's check" "in the proper circumstances." 288 F.3d at 341. Since its ruling in Cassello, the Eighth Circuit has had the opportunity to extend a bank's duty of inquiry set forth in Dalton & Marberry to non-customers. However, the court has declined to do so. See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Raczkowski, 764 F.3d 800, 804–06 (8th Cir. 2014) ("Dalton & Marberry established that banks owe a duty of inquiry to customers; however, we decline to extend that duty further in this case.").

Plaintiff here is neither a customer nor an account holder at PNC bank. The Court declines to impose a duty of care in these circumstances that extends beyond the limits set forth by the Missouri Supreme Court and the Eighth Circuit in interpreting Missouri law. See Nat'l Union Fire Ins. Co., 764 F.3d at 803–04 (citing Zabka v. Bank of Am. Corp., 127 P.3d 722, 724 (Wash. Ct. App. 2005) ("Many other jurisdictions have held that third party non-customers are not owed a duty of care by a bank, absent a direct relationship or statutory duty.") and Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., 56 Cal. Rptr. 2d 756, 760 (Cal. Ct. App. 1996) (agreeing with "[r]ecent cases [that] have held that absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer")). As such, the Court finds that plaintiff has failed to establish that defendant owed her a duty of care under a common law negligence theory.

The only cognizable duty plaintiff cites in the complaint is a statutory duty arising under the framework of the UCC. See Pet. ¶¶ 106–109 [Doc. #4] (citing Mo. Rev. Stat. § 400.3-110, requiring the indorsement of all named payees on a draft to negotiate a multiple-party draft). As with plaintiff's common law conversion claim, the Court finds that plaintiff's negligence claim is displaced

inasmuch as it involves circumstances specifically covered by or inconsistent with the provisions of the UCC. See Choice Escrow, 2011 WL 2601209, at *3. Pursuant to the thus controlling statute of limitations in section 400.3-118(g), "an action . . . to enforce an obligation[ or] duty . . . arising under this Article . . . must be commenced within three years." Accordingly, Count V will also be dismissed.

\* \* \* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendant PNC Bank, National Association to dismiss Counts I, III, and V of the complaint for failure to state a claim [Doc. #10] is **granted.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of May, 2016.